UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>   )<br>v.   )   CRIMINAL NO. 17-cr-10107-RWZ<br>   )<br>ADARBAAD F. KARANI,   )<br>   )<br>   Defendant.   )<br>   ) | |

## GOVERNMENT'S SENTENCING MEMORANDOM

### INTRODUCTION

The government respectfully submits its Sentencing Memorandum and recommendation for the Court's consideration. Defendant's offenses, adjusted upward for his abuse of a position of trust and obstruction, and paired with his criminal history category (I), yield a guideline sentencing range (GSR) of 21-27 months. For the reasons set forth below, and considering all of the factors set out in 18 U.S.C. § 3553, the government recommends that this Court sentence the defendant to 21 months incarceration, 2 years supervised release, a criminal fine of $7,500, and a $100 mandatory special assessment.

Defendant was charged by Indictment with two counts of making false statements during the purchase of a firearm in violation of 18 U.S.C. § 922(a)(6), and two counts of making false statements in a record in violation of 18 U.S.C. § 924(a)(1)(A). After a jury trial during the week of September 10, 2018, defendant was convicted on two counts of making false statements during the purchase of a firearm in violation of 18 U.S.C. § 922(a)(6) (Counts One and Two), and one count of making false statements in a record in violation of 18 U.S.C. § 924(a)(1)(A) (Count Four). The jury acquitted defendant on Count Three.

**FACTS**

Defendant was a nine-year veteran with the Boston Police Department ("BPD") when he offered to make straw purchases of firearms from federally licensed firearms dealers ("FFLs") on behalf of two civilian acquaintances, Joseph Depasquale and David Ilnicki, both of whom defendant had met through the Boston night club scene. Defendant used his position as a police officer to obtain both firearms, which Massachusetts state regulations prohibit dealers from selling to civilians, and to obtain police discounts on both firearms. This prosecution arose in connection with the investigation of Ilnicki's firearm that was stolen and later recovered during the execution of an arrest and search warrant for Desmond Crawford, a violent drug dealer and member of the Columbia Point Dawgs gang.

The evidence presented at trial demonstrated that defendant abused his position of trust as a police officer to make straw purchases of firearms for Depasquale and Ilnicki.[1] Defendant solicited Depasquale's interest in a straw purchase while defendant was conducting a security detail in police uniform at a night club owned by Depasquale's father. Then, on November 19, 2014, defendant purchased a Glock, model 27, .40 caliber pistol for Depasquale from an FFL and answered that he was the actual buyer/transferee on ATF Form 4473's Question 11.a[2]. Two days later, defendant transferred the firearm to Depasquale in a Macy's bag in exchange for approximately $500. Defendant's text messages with Depasquale and his statement to law enforcement officers in an April 15, 2016 interview demonstrate defendant's intent to make a straw purchase on behalf of Depasquale. Defendant's proposal to delay the transfer in hopes of avoiding

---

[1] As this Court presided over the trial, the government only briefly summarizes the evidence.
[2] Question 11.a. of Form 4473 states, "Are you the actual transferee/buyer of the firearm(s) listed on this form? **Warning: You are not the actual buyer if you are acquiring the firearm(s) on behalf of another person. If you are not the actual buyer, the dealer cannot transfer the firearm(s) to you**." [emphasis in original].

detection indicates his knowing disregard for the law. For example, after purchasing the firearm, defendant wrote to Depasquale, "sup? picked up ur piece today. gotta good deal on it. has the nightsights. came out to $500 w/ tax. should wait few days before we do the transfer." Furthermore, defendant recognized that his position as a BPD officer enabled the straw purchase and stated during the April 15 interview that Depasquale had sought his help because Depasquale, as a civilian, could not purchase the Glock.

Then on September 5, 2015, defendant purchased a Glock, model 30S, .45 caliber pistol for Ilnicki from another FFL. Defendant again fraudulently claimed on Form 4473 that he was the actual transferee/buyer, submitted an affidavit with his police identification asserting that he was purchasing the weapon for his official duties as a law enforcement officer, and transferred the firearm, wrapped in a t-shirt, to Ilnicki for approximately $500. Defendant's text messages with Ilnicki demonstrate that defendant recognized that his position as a BPD officer enabled the straw purchase because he could buy a Glock and could do so at a discount. Complaining that firearms were expensive or could only be sold to police officers, Ilnicki asked defendant if he knew any officers selling guns, to which defendant replied, "whatcha want? ill hook u up[.]"

Less than a month after Ilnicki received the firearm, it was stolen from his car. Ilnicki, a firearms novice, had improperly stored the gun in his car's glove compartment, in violation of Massachusetts state law. It was subsequently recovered during the execution of an arrest and search warrant for Desmond Crawford, a violent drug dealer and gang member.

During the course of these two straw purchases, defendant corresponded with his friend Anthony Carullo by text message. These text messages confirm that defendant strongly considered making similar straw purchases in the future, that he understood the risk to public safety posed by

transferring a firearm to novice Depasquale, and that he had also abused his position as a police officer to steal firearm magazines from a police shooting range.

First, defendant demonstrated an understanding that transferring firearms to individuals who lack familiarity with firearms poses a risk to public safety. When Carullo asked defendant why Depasquale needed defendant's help to order a firearm holster, defendant explained, "nah he doesn't know nuttin[.]" Carullo replied, "And hes carrying. Thats scary. Lol[.]" Confirming that transferring firearms to novices poses a risk to public safety, defendant wrote, "yep lol[.]"

Second, the messages show that defendant strongly considered making straw purchases of firearms in the future. Defendant repeatedly asked Carullo how many straw purchases defendant could make without getting caught. On November 11, 2014, when discussing how many firearms he could buy, defendant asked, "ok np, whats the red flag, 2 a month?" Similarly, on November 21, 2014, Carullo highlighted the income that defendant could earn by making additional straw purchases and wrote, "Nice paper right there[.]" Defendant replied, "ya man, i gotta start doin that shit." When Carullo informed defendant that he could make four purchases every year, defendant replied "ahh fuck it maybe ill do 3 more this yr then[.]"

Third, defendant also informed Carullo that he abused his position as a police officer by stealing equipment from a shooting range, presumably operated by the BPD. On December 11, 2015, defendant wrote to Carullo, "i swiped 2 glock mags from the range today."[3]

---

[3] An examination of defendant's Internal Affairs (IA) file reveals that between 2005 and 2016, there is at least one reported instance in which defendant attempted to abuse his position as a BPD officer. In the early morning on January 9, 2015, BPD officers found defendant in his car parked in an alley, and, after rejecting numerous requests that he identify himself, defendant eventually responded, "You're not the only one with a badge and a gun." Identifying defendant as hostile and fearing that he might have a firearm, the BPD officers placed him in handcuffs, inspected his identification, and discovered that he was also an officer. In the subsequent internal investigation, defendant was found to have engaged in conduct unbecoming and in the abuse of alcohol while off-duty. In this incident, defendant demonstrated a willingness to use his position as a police officer to evade circumvent the law and law enforcement.

Defendant's false testimony also merits an upward adjustment for obstruction of justice pursuant to USSG § 3C1.1.  A review of defendant's testimony demonstrates an effort to mislead the jury not only in his manufactured story that he believed the guns were gifts, but also on relevant facts for which there was undisputed evidence to the contrary.  For example, he repeatedly and falsely testified that Ilnicki did not pay him in advance for the gun, even when confronted with text messages to the contrary.  *See, e.g.*, Karani Trial Testimony p.35, lines 21-23; p.36, lines 6-11; p.43, lines 20-25.

## ARGUMENT

**A.  The Nature and Circumstances of the Offense Merit a 21-Month Sentence**

In committing these offenses, defendant distributed firearms with little regard for public safety, and he strongly considered continuing to make straw purchases that would have put the public at additional risk.  His crimes are made worse by the fact that he was sworn to uphold the law and that he used his position as a police officer to commit these crimes.

   *1.  The Court Should Apply Base Offense Level of 12*

Under the Sentencing Guidelines provisions set forth in § 2K2.1, defendant's two violations of 18 U.S.C. § 922(a)(6), one violation of 18 U.S.C. § 924(a)(1)(A), and the facts of the case warrant a base level offense of 12.  The government does not allege that either the Glock, model 30S, .45 caliber pistol or the Glock, model 30S, .45 caliber pistol was capable of receiving a large capacity magazine or was a firearm that is described in 26 U.S.C. § 5845(a).  See U.S. Sentencing Guidelines Manual § 2K2.1(a) (U.S. Sentencing Comm'n 2016); see also id. at cmt. n.2.  Similarly, the government does not allege that defendant committed any of the three offenses subsequent to sustaining a felony conviction of either a crime of violence or a controlled substance offense.  Id. at § 2K2.1(a).  Lastly, the government not does allege that defendant committed any

of the three offenses with knowledge, intent, or reason to believe that the offense would result in the transfer of a firearm or ammunition to a prohibited person. USSG § 2K2.1 (a)(4)(B).  None of the special offense characteristics under §2K2.1 apply.  Id. at § 2K2.1(b).  However, a downward departure is not warranted because, despite defendant's rejected theory of viewing the transferred firearms as gifts, defendant was motivated neither by an intimate or familial relationship nor by threats or fear to commit the offense. Id. at cmt. n.15.  In addition, the defendant received monetary compensation from both firearm transfers.  See id.  Therefore, the government recommends the greatest applicable base offense level of 12.[4]

    2. *The Court Should Apply a Two-Level Enhancement for Abuse of Position of Trust*

The Court should apply a two-level enhancement because defendant abused a position of public trust by using his BPD officer status, identification, and uniform to facilitate his straw purchases of firearms, which retailers were prohibited to sell to civilians under Massachusetts state regulations, and to obtain police officer discounts.  Id. at § 3B1.3.  The First Circuit has established a two-step approach to determine whether this enhancement applies.  United States v. Rehal, 940 F.2d 1, 5 (1st Cir. 1991).  First, the factual issue is whether the defendant did, in fact, "abuse[] a position of public or private trust."  Id.  Second, the legal issue is whether the defendant's abused the position in "a manner that significantly facilitated the commission or concealment of the offense."  See id. (citations omitted).

First, in regards to upward enhancements, the First Circuit has held that any crime committed by a police officer categorically constitutes an abuse of trust. Id. (citing United States v. Foreman, 926 F.2d 792, 796 (9th Cir. 1990) (dissenting opinion) ("The public, including fellow law enforcement agents, expect that police officers will not violate the laws they are charged with

---

[4] The three offenses of conviction should be grouped.  USSG §3D1.2.

6

enforcing."); see also United States v. Martinez-Lozano, 19 F. App'x 1 (1st Cir. 2001); United States v. Baker, 82 F.3d 273 (8th Cir. 1996) ("Because police officers clearly occupy positions of public trust, the inquiry in most cases is whether defendant used a police officer's special knowledge or access to facilitate or conceal the offense."). It is not disputed that defendant committed the three offenses during his tenure as a BPD officer.

Since defendant's position as a BPD officer at the time of the offenses satisfies the first step, the analysis advances to the second step of whether defendant's position as a BPD officer significantly facilitated his commission or concealment of the offense. The record clearly demonstrates that defendant abused his position as a police officer, specifically his access to certain firearms and retail police discounts, to significantly facilitate the commission of the offenses. Courts have held that a § 3B1.3 enhancement applies when a police officer uses special knowledge, access, or both to significantly facilitate an offense. Baker, 82 F.3d at 277 (citing United States v. Williamson, 53 F.3d 1500, 1525 (10th Cir. 1995)). In this case, in order to complete the purchase of both firearms, defendant submitted affidavits to each FFL asserting his position as a police officer as well as copies of his police identification card that included the BPD's name and seal, defendant's name, photograph, status as a police officer, unit, and identification number.

Furthermore, defendant extended himself to Ilnicki and Depasquale as an official willing to abuse his position of trust. As evidenced by defendant's text messages with Ilnicki, Ilnicki explicitly sought a police officer's help in making a straw purchase, because retailers only offered certain types of firearms and discounts to law enforcement officers and wrote, "Know any guys on force selling anything new prices are crazy smh or for cops only lol[.]" Referencing his position as a police officer, defendant replied, "whatcha want? ill hook u up[.]" Similarly, at trial, defendant

7

conceded that when he initially offered Depasquale his support in making a straw purchase, defendant was working a detail at a night club in full police uniform.

Lastly, defendant demonstrated a clear understanding of the power of his position and his access to certain firearms and discounts.  Defendant's text messages with Ilnicki demonstrate this understanding.  Additionally, in defendant's text messages with Carullo, Carullo repeatedly reminded defendant that law enforcement officers get better deals on firearms because of the police discounts.  Even when Carullo recommended a certain dealer who would sell a Glock pistol to Depasquale so that defendant would not have to make the straw purchase on Depasquale's behalf, defendant rejected the suggestion, "nah i told him id get it so i gotta follow through[.]"

Because Massachusetts state regulations prohibit dealers from selling the relevant firearms to civilians and because the retail discounts were not available to civilians, defendant would not have been able to make the straw purchases but for his position as a police officer and his willingness to abuse that position.  Furthermore, by extending himself to Ilnicki and Depasquale as a police officer willing to make straw purchases of firearms, defendant demonstrated a clear understanding of the power of his position to facilitate the given offenses.

    3.    *The Court should apply a USSG § 3C1.1 enhancement*

The Court should apply an enhancement for obstruction of justice pursuant to USSG § 3C1.1.  As set forth above and in the government's submission to probation, defendant lied in his testimony before the jury with regard to specific material facts, such as when Ilnicki paid him for the gun.  United States v. Cohen, 877 F.3d 77, 89 (1st Cir. 2018).  In addition, his concocted story that he viewed the guns as "gifts" amount to a "willfully false reconstruction" of events,  United States v. Shinderman, 515 F.3d 5, 19 (1st Cir. 2008), which supports a finding by

8

this Court that the enhancement should apply.  United States v. Gobbi, 471 F.3d 302, 315 (1st Cir. 2006).

### B. The 18 U.S.C. § 3553 Factors Also Militate Towards a 21-Month Sentence

A 21-month sentence would be sufficient, but not greater than necessary to comply with the purposes of sentencing established in 18 U.S.C. § 3553, specifically, to reflect the seriousness of the offense, to promote respect for the law, and to afford adequate deterrence to criminal conduct.  This sentence would reflect the seriousness of defendant's violating the law he swore to uphold as a police officer and deter criminal conduct by police officers who are interested in abusing manufacturer discount programs and special access to firearms to make straw purchases. Firearm manufacturer discounts offered exclusively to law enforcement officers, military service members, and corrections officers create a perverse incentive for members of those communities to make straw purchases for civilians.[5]  Similarly, state regulations such as those in Massachusetts that restrict the sale of certain types of firearms to civilians also create perverse incentives for law enforcement officers and military personnel to make straw purchases and enable civilians to circumvent regulations aimed at protecting public safety.[6]  Some police officers have begun to abuse these exclusive discounts and their special access to firearms by developing straw purchase schemes.[7]  Defendant's crimes represent this trend of some law enforcement officers abusing their

---

[5] For example, Glock offers a discount of approximately $75 to $100 for law enforcement officers, military service members, corrections officers, and other select groups.  See Glock Blue Label, Glock, https://us.glock.com/buy/blue-label-program (last visited Oct. 5, 2018).

[6] The Massachusetts Attorney General acknowledges that "[a]s always, the handgun regulations do not pertain to firearms used by law enforcement or military personnel as part of their official duties."  See Attorney General's Handgun Regulation Enforcement Notices, Mass.gov, https://www.mass.gov/files/documents/2016/12/wg/ag-handgun-regulation-enforcement-notices.pdf (last visited Oct. 5, 2018); see also 940 Mass. Code Regs. 16.01 (2018).

[7] The Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) issued a statement to Southern California police chiefs and sheriffs that local law enforcement officers are buying and reselling firearms in violation of federal laws.  See Greg Moran & Lyndsay Winkley, Law Enforcement Officers May Be Illegally Selling Guns, ATF Says, Los Angeles Times (Apr. 23, 2017), http://www.latimes.com/local/lanow/la-me-ln-illegal-gun-sales-20170412-story.html.  Two California police officers are currently on trial for abusing their firearm purchase privileges and making similar straw purchases.  See Richard Winton, Two Gardena Police Officers Charged with Illegally Selling

9

position of public trust and putting public safety at risk. A 21-month sentence serves to reflect the seriousness of defendant's offenses as well as the threats to public safety that defendants' crimes gave rise to, illustrated by Ilnicki's firearm being recovered during a search of a violent drug dealer and gang member. Further, in light of the recent trend, the sentence serves as a deterrent message to other law enforcement officers that if they abuse their privileges related to discounts and special access, violate the law that they swore to uphold, and make straw purchases, they will be held accountable for their criminal conduct.

## CONCLUSION

For all of the above reasons, the government recommends that this Court impose sentence as follows: 21 months incarceration; 2 years supervised release; a criminal fine within the guideline range as calculated by the Court; a criminal fine of $7,500; and a $100 mandatory special assessment.

Respectfully submitted,

ANDREW E. LELLING
United States Attorney

By:   /s/ Eugenia M. Carris
Eugenia M. Carris
Dated: December 13, 2018            Assistant United States Attorney

---

More Than 100 Guns, Los Angeles Times (Mar. 26, 2018), http://www.latimes.com/local/lanow/la-me-gardenapolice-guns-dealing-20180326-story.html. Also, a former Sacramento deputy sheriff was convicted of conducting a similar straw purchase scheme in 2016. Press Release, The U.S. Attorney's Office for the Eastern District of California, Former Sacramento County Sheriff's Deputy Sentenced to 18 Months in Prison for Unlawful Sale of Firearms (June 30, 2016), https://www.justice.gov/usao-edca/pr/former-sacramento-county-sheriff-s-deputy-sentenced-18-months-prison-unlawful-sale.

**CERTIFICATE OF SERVICE**

      I, Eugenia M. Carris, Assistant United States Attorney, certify that, on the above date, this document was filed through the ECF system, which sends copies electronically to the registered participants as identified on the Notice of Electronic Filing.

                               By:        /s/ Eugenia M. Carris
                                             Eugenia M. Carris
                                             Assistant U.S. Attorney